COMM'RS OF SALINE COUNTY V. J. E. YOUNG.

1. PLEADING; *Allegation of "Title;" Question of Fact, and Not of Law.* Whether the title to government land has so passed from the government that the land has become taxable, may be a question of fact, and not merely a question of law; and whether the title has or has not so passed, may be alleged, in a pleading, as a fact.

2. ILLEGAL TAX-SALE; *Liability of County to Refund; Statute of Limitations.* Where land has been taxed for several years, and was sold to the county for the taxes of the first year, and the other taxes were charged up against the land, and Y. afterward purchased from the county the tax-sale certificate, and afterward the county clerk discovers that the land had belonged all the time to the United States, and was therefore

not taxable, and refuses to convey said land to Y. for said taxes; and the county treasurer then, upon an offer to return the tax certificate, refuses to pay back to Y. the amount paid therefor by Y. with interest, etc., *held*, that the statute which provides that "no *account* against the county shall be *allowed*, unless presented within two years after the same accrued," does not apply to the claim of Y. for the moneys due him on return of his tax certificate, and hence does not bar said claim of Y. in two years.

### *Error from Saline District Court.*

ACTION by *Young* to recover from the county the amount paid by him for certain illegal tax certificates, and subsequent taxes on the lands illegally assessed and sold. The facts fully appear in the opinion, *infra*. The district court, at the November Term 1875, gave judgment in favor of *Young*, and the *Board of County Commissioners* brings the case here.

*John Foster*, for plaintiff in error.

*J. G. Mohler*, and *C. A. Hiller*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: On the 11th of August 1875, the defendant in error, J. E. Young, who was plaintiff below, commenced this action against the board of county commissioners of Saline county. He set forth in his petition thirteen separate causes of action; but as the legal questions involved in each cause of action are precisely the same as those involved in the others, it will be necessary to state the facts set forth in only one of such causes of action. The first cause of action sets forth substantially the following facts: In 1868 the proper officers of Saline county levied taxes on the northeast quarter of section 1, township 14 south, of range 5 west. On 28th June 1869, said land was sold to said county for said taxes, and afterward the subsequent taxes for subsequent years were charged up against said land. On 28th June 1872, the plaintiff, for the purpose of purchasing the tax title to said land, paid into the treasury of said county $83.03, said sum being equal to the cost of redemption of said land at that time. The county

29—18 KAS.

treasurer then issued to the plaintiff the proper certificate, and the county clerk duly assigned the same to the plaintiff. On the 1st of April 1873 the county clerk discovered that said land belonged to the United States, and that it was therefore exempt from taxation, and therefore that it ought not to be conveyed to the plaintiff for said taxes; and the county clerk refused to convey the same. The plaintiff then offered to return his said tax certificate to the county treasurer, and demanded that the treasurer should refund to him the amount he paid therefor, with interest, etc., but the treasurer refused. There are some other facts stated in the petition, but we do not think it is necessary to mention them. The defendant below demurred to this petition, on the ground that neither it nor any count thereof stated facts sufficient to constitute a cause of action. The court below overruled the demurrer, and the defendant excepted. The defendant, who is plaintiff in error, raises only two questions in this court: First, the plaintiff in error claims that the plaintiff below was bound to know that said land belonged to the United States; that if he did not know the same, and supposed otherwise, it was a mistake of law, and not a mistake of fact; and therefore, as he paid said money merely upon a mistake of law he cannot now recover the same back. Second, the plaintiff in error also claims that whatever action the plaintiff below may have had, the same was barred by a certain statute of limitations before this action was commenced.

The plaintiff in error might have raised still other questions; but it has not done so, and as these are the only ones it has raised in this court, these are the only ones which we shall consider or decide. We shall presume that the plaintiff in error waives all other questions.

Was the plaintiff below bound to know that said land belonged to the United States, and therefore that it was not taxable? And is his claim for a return of his money barred by any statute of limitations? We must answer both of these questions in the negative.

I. It is not an uncommon thing for land to be sold or

granted by the United States so as to become taxable long before any public record shows it to be taxable. This has been preëminently so with respect to a great deal of land in Saline county. (*K. P. Rly. Co. v. Culp*, 9 Kas. 38; *Railway Co. v. Prescott*, 16 Wallace, 603; *Railway Co. v. McShane*, 22 Wallace, 444.) Such land was granted to the Leavenworth, Pawnee & Western Railroad Company, now Kansas Pacific Railway Company, upon certain conditions. (12 U. S. Stat. at Large, 489, et seq.; 13 U. S. Stat. at Large, 356, et seq.) When these conditions were all performed, the land became the property of the railroad, and not till then. But some of these conditions were such that no public record would show when they were performed. For instance, one of these conditions was that the railroad company should complete its road through these lands before any title should pass. Now as soon as this and the other conditions were performed, the land would belong to the railroad company so as to be taxable, although no record would then show such completion, and although no patent would then have been issued. (See cases above cited.) Indeed, it never was necessary that the patent for land granted by the United States should first be issued before the land could become taxable. (*McMahon v. Welsh*, 11 Kas. 280, 291, 292; *Gulf Rld. Co. v. Morris*, 13 Kas. 302.) All that was ever necessary was, that the grantee should be entitled to receive the patent. Now the completion of a railroad is certainly more a question of fact, than of law; and no person is bound as a matter of law to take notice of its completion. Therefore no person was bound as a matter of law to take notice of the completion of said railroad through Saline county, or rather through certain lands situated in Saline county. And therefore no one can be presumed to have known when said lands became taxable. But is any one, in any case, bound to know as a matter of law when the title to land so passes from the government that the land becomes taxable? As we have before said, the land is taxable as soon as some person is entitled to receive a patent therefor; but the patent may not be

1. Mistakes of fact, and of law.

issued for months, or even years, after such person is entitled to receive it. And if every person is bound to know when land, sold or granted by the government, becomes taxable, he is also bound to know when all the facts transpire which give to any person a right to receive a patent for such land from the government. Can it be that the law requires any such thing? And even when the patent is issued, is any person except the one to whom it is issued bound to know that fact? It is true, the patent is recorded in Washington; but is any person bound to take notice of that record? We. do not think that it is necessary to answer these questions in this case. But passing on, is it necessary even, that the error or mistake in supposing said land to be taxable should be one of fact, instead of one of law? The plaintiff in this case claims under section 120 of the tax law of 1868, (Gen. Stat. 1058,) and not under any general rules of law or equity. That section provides among other things as follows:

"And if after any certificate shall have been granted upon such sale, [a tax sale,] the county clerk shall discover that, for any error or irregularity, such land ought not to be conveyed, he shall not convey the same; and the county treasurer shall, on the return of the tax certificate, refund the amount paid therefor on such sale, and all subsequent taxes and charges paid thereon by the purchaser or his assigns, out of the county treasury, with interest on the whole amount at the rate of ten per cent. per annum."

Now whether the said "error or irregularity" to be "discovered" by the county clerk, must necessarily be one of fact, or whether it may not be one of either law or fact, we do not think it is necessary to decide in this case. For the "error or irregularity" actually "discovered" by the county clerk in this case was probably and presumably one of fact. It consisted in supposing that the land did not belong to the United States, and that it was taxable, while in fact the land did belong to the United States, and was not taxable. Such an "error or irregularity" is sometimes, as we have already seen, a mistake of fact. Probably it generally is, and possibly it always is. It has already been decided by this court,

that an "allegation of ownership, is the statement of a fact;" that "as against a demurrer, allegations in a petition that the plaintiff is the owner of certain lands, and that the same *were not subject to taxation* for a given year, will be deemed sufficient as statements of fact." (*L. L. & G. Rld. Co. v. Leahy*, 12 Kas. 124.) Now the petition in this case sufficiently alleged that said land belonged to the United States, that it was not taxable, that nevertheless it was taxed, and that the county clerk discovered the error on April 1st 1873; but there is nothing in said petition which shows that said error was one of law.

II. The plaintiff in error also claims that claim of the plaintiff below is barred by the following statute, to-wit: "No account against the county shall be allowed, unless pre-2. Illegal tax- sented within two years after the same accrued." sale; liability to refund, lim- (Gen. Stat. 264, §47.) Now this statute is not itation of ac- tion. applicable to this case. It applies only where it is necessary for the claimant to present his "account" to the county board to be "allowed" by them in order that he may obtain a county order on the county treasury for the amount of his claim. It does not apply where his claim is already liquidated and "allowed" by law, and where the instrument upon which he draws his money is already issued. In such a case as this, all that is necessary for the claimant to do is to present his tax certificate to the county treasurer and receive his money; (Gen. Stat. 1058, § 120.) The county board has nothing to do with allowing, or disallowing, his claim, or with issuing an order on the county treasurer for it. When the county clerk "discovers" the "error or irregularity," and refuses to convey the land for which the tax certificate calls, then the claim of the holder of the tax certificate becomes complete, and he is at once entitled to receive his money from the county treasury. The plaintiff in error also says in its brief, "but this action accrued more than three years next before commencement, and is therefore barred by section 18 of civil code." Now the county clerk did not discover said "error or irregularity" until April 1st 1873; nor did the

county treasurer *refuse* to refund to the plaintiff his money prior to that time; and this suit was commenced August 11th 1875. Therefore, the claim of the plaintiff is not barred by said statute. It is not claimed that the plaintiff's claim is barred by any other statute of limitation.

The order of the court below overruling said demurrer will be affirmed.

All the Justices concurring.